[No. 7646]

MINE & SMELTER SUPPLY COMPANY v. KUENZEL PROCESS SMELTER COMPANY.

1. MECHANICS' LIENS—*Statement of Lien—Time of Filing*—Under Rev. Stat. sec. 4033, no lien can be allowed for material furnished or labor performed towards the erection or completion of the structure unless the statement required by that section is filed before the expiration of two months from the completion of the building or structure.

2. ——*When Is the Structure Complete*—The addition to a smelter, after it is put in operation, of conveniences which are not a necessary part of the plant, and without which it can be operated e. g. trackage facilities

for handling ore, buckets and screw conveyors, or a refinery, does not extend the period within which the statement must be filed.

*Error to the Chaffee District Court.*—Hon. CHARLES A. WILKIN, Judge.

Mr. S. H. THOMPSON, JR., and Messrs. BRYANT, NYE & MALBURN, for plaintiff in error.

Mr. G. K. HARTENSTEIN, for Mason.

Mr. JUSTICE GARRIGUES delivered the opinion of the court:

1.  This action, brought by the Supply Company, plaintiff in error, against the Process Company, defendant in error, was to foreclose mechanics' liens on a smelter plant, claimed for supplies, materials and machinery furnished to the Process Company. The principal defendant defaulted, and upon hearing, judgment was pronounced against it for the amount of the claims, but by leave of court, one Mason was permitted to intervene and contest plaintiff's right to liens on the smelter, he having purchased it at execution sale.

The first lien claim statement, filed October 28, 1910, is for supplies furnished by plaintiff between April 1 and August 23, 1910; the other, filed November 1, 1910, is on account of materials furnished by Fairbanks Morse & Co., between April 10 and June 30, 1910, duly assigned to plaintiff.

2.  The lien statements do not purport to be for materials furnished towards repairs and improvements. The complaint alleged, and plaintiff proceeded on the theory that they were filed prior to the completion of the smelter, and that the materials furnished were used in its construction. The intervenor denied these allegations, and alleged the smelter was completed more than

two months before either statement was filed, and the only contested issue is the date of completion. There was evidence, evidently accepted by the trial court as establishing the fact in the case, that the smelter was completed in running order, and running in October, 1909, and while the court did not give the exact date of completion, it found it was completed before the commencement of the furnishing any of the materials for which liens are claimed.

3.   Section 9 of our mechanic's lien law, S. L. 1899, p. 271, provides:   All lien statements of all material-men whose claims are for materials, machinery or other fixtures, must be filed for record after the last material is furnished for which the lien is claimed, and before the expiration of two months after the completion of the building, structure or other improvement.

Was the smelter completed before April 1, 1910, the date of the commencement of furnishing materials on account of which the liens are claimed? If so, it is clear, neither lien statement was filed within two months next after the completion of the smelter. The trial court answered this question in the affirmative, and plaintiff has abandoned all other assignments of error.

4.   Under the rule announced by us in *Foley v. Coon,* 41 Colo. 432, 93 Pac. 13; *Lichty v. Houston L. Co.,* 39 Colo. 53, 88 Pac. 846; and *Stiger v. McPhee,* 15 Colo. App. 252, 62 Pac. 332, we might dispose of the case by declining to review this finding of fact by the trial court; but in as much as it is so seriously urged that a review of the testimony is necessary to arrive at a correct determination of the case, we have given it our careful consideration.

5.   It seems that bucket and screw conveyors were brought to the plant for the first time in September, 1910, and some work performed towards installing them; but

as we understand, they were never completed and placed in operation, and are no part of the materials or supplies for which liens are claimed. In fact, much of the so-called lienable material was non-structural in character, such as blacksmith tools, assayer's outfit, etc., that never entered into the construction of the plant.

Charles A. Kounzel, president of the Process Company, who had charge of constructing the smelter, testified it was completed and in operation August, 1909; that he operated four furnaces five weeks in August and September of that year, and shut down for lack of capital; that he commenced operating again in April, 1910, and worked in July and August with two and sometimes three shifts of men; that 60 men were employed while the smelter was running in July and August; that the bucket and screw conveyors were labor saving improvements added to the plant, and were no part of the original plan. Other witnesses testified that the plant was operated at various times in 1909 and prior to October, 1910. George Bucher, a witness on behalf of plaintiff, testified that he worked in the smelter from March 12 to October 15, 1910, as an assayer, during which period it was running at various times, and that several furnaces were operated at one time with night and day shifts.

6. Plaintiff in error contends the plant was not completed because there was no trackage facilities for handling ore and matte; because a refinery to be used in connection with the smelter was not completed; and because the bucket and screw conveyors, brought to the smelter for the first time in September, 1910, were never installed in working order. It appears these latter never were in operation. The evidence shows, however, that they were not a necessary part of the plant, that the original intention was to feed by hand and they were being installed as an improvement as rapidly as time and the

finances of the company would permit. They were not brought to the plant until after the smelter had been completed and in operation for over a year, and while they were a labor saving improvement, and when installed would increase the output and earnings of the plant, they were not necessary to its operation or completion. Trackage facilities for the transportation of ore and its products were no part of the smelter. Neither was a refinery which might or might not be used in connection with it. It could be and was operated without them.

From a consideration of all the evidence, we are of the opinion that the court was right in its finding that the smelter was completed, within the meaning of the lien statute, before April 1, 1910, and that the lien statements were not filed within two months next after the completion of the plant. The judgment is affirmed.

*Affirmed.*

CHIEF JUSTICE MUSSER and Mr. JUSTICE SCOTT concur.